FILED BY _____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

00 JAN 12 PM 4: 12

| | | |
|---|---|---|
| JAMIE HAMILTON and wife,<br>BONNIE HAMILTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | No. 97-1261 |
| | ) | |
| GARY MYERS, as executive director<br>of the Tennessee Wildlife Resources<br>Agency, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On November 12, 1997, Plaintiffs Jamie and Bonnie Hamilton filed this action

pursuant to 42 U.S.C. § 1983 against Gary Myers, the executive director of the Tennessee

Wildlife Resources Agency ("TWRA"), and the members of the Tennessee Wildlife

Resources Commission ("TWRC") in their official capacities. Plaintiffs sued Harold Hurst,

Gary Cook, Paul Brown, Ken Dykes, Andy Tweed, Wade Hendren, Frank Evans, Jeff

Martin, Larry Thurston, and Brian Thompson, all employees of TWRA, individually.

On January 27, 1998, an agreed order was entered, staying the proceedings in this

action pending resolution of a related state action. The stay was lifted on July 14, 1999, after

83

the parties notified the court that the state court action had been resolved.[1]  Plaintiffs were also allowed to amend their complaint on that same date.  Defendants have now filed a motion for summary judgment.  Plaintiffs have filed a response and a supplemental response to Defendants' motion, and Defendants have filed a reply to the responses.  Plaintiffs have also filed a second supplemental response to Defendants' motion.  For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  To prevail on a motion for summary judgment, the moving party has the burden of showing the "absence of a genuine issue of material fact as to an essential element of the nonmovant's case."  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The moving party may support the motion with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The opposing party may not rest upon the pleadings but, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of

---

[1] Plaintiffs filed suit in the Circuit Court of Obion County, Tennessee, in August 1997, pursuant to 42 U.S.C. § 1983, alleging essentially the same facts and causes of actions alleged in the action in this court. Suit was brought against the same defendants, except that in the state action the Tennessee Wildlife Resources Agency and the Tennessee Wildlife Resources Commission were sued, and in the present action, the executive director of the TWRA and the members of the TWRC are sued in their official capacities. The Circuit Court granted the Defendants' motion to dismiss. The Court of Appeals affirmed the dismissal of the action against the state agencies but reversed the dismissal of the action against the individual officers. Hamilton v. Cook, 1998 WL 704528 (Tenn. App.). The action was remanded to the Circuit Court. On April 13, 1999, the Circuit Court entered an order granting the Plaintiffs' motion for voluntary dismissal of their claims against the individual officers.

a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. Anderson, 477 U.S. at 249. Rather, "[t]he inquiry on a summary judgment motion . . . is . . . `whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street, 886 F.2d at 1479 (quoting Anderson, 477 U.S. at 251-52). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

In their complaint, Plaintiffs allege that they are riparian owners on Reelfoot Lake in Obion County, Tennessee. On November 16, 1996, Defendants removed Plaintiffs' decoys and a floating duck blind that was attached to a boat tied to a pole in Reelfoot Lake. Plaintiffs contend that the removal of the blind, decoys, and boat constituted an illegal search and seizure and a denial of due process under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Additionally, Plaintiffs allege that Defendants have violated their riparian property rights by allowing nonriparians access to the portion of Reelfoot Lake above their property.

Defendants have moved for summary judgment on several grounds. First, Defendants Myers and the members of the TWRC contend that the suit against them is barred by the

Eleventh Amendment and does not fall within the exception announced in *Ex parte* Young.

Generally, when a suit is brought against state officials in federal court, it is in reality a suit against the state and is barred by the Eleventh Amendment.[2] Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 102 (1984).  The Supreme Court has recognized a narrow exception to Eleventh Amendment immunity for suits brought in federal court against state officials which seek only declaratory or prospective injunctive relief.  See *Ex parte* Young, 209 U.S. 123 (1908).  Traditionally, these actions have been allowed only "to end a continuing violation of federal law." Green v. Mansour, 474 U.S. 64, 68 (1985).  As explained in Green:

> Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in *Ex parte* Young gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.

474 U.S. at 68 (citations omitted.)

Thus, the *Ex parte* Young doctrine applies only to ongoing and continuous violations of federal law.  Green, 474 U.S. at 68.  That is, a plaintiff may not use the doctrine to adjudicate the legality of past conduct.  Id.  Additionally, the doctrine does not apply when the equitable relief sought "implicates special sovereignty interests." Idaho v. Coeur d'Alene

---

[2] The Eleventh Amendment to the United States Constitution provides:  "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Tribe, 117 S. Ct. 2028 (1997).[3]

In the present case, the complaint assert claims for declaratory and injunctive relief against Defendants Myers and the members of the TWRC in their official capacities. Plaintiffs seek (1) an order declaring that enforcement of the TWRA permit program violates Plaintiffs' constitutional rights and enjoining Defendants Myers and TWRC members from enforcing the permit program against Plaintiffs; (2) an order declaring that Defendants Myers and TWRC members have violated Plaintiffs' constitutional rights by allowing nonriparians access to and use of Reelfoot Lake and enjoining these Defendants from granting such access in the future; and (3) an order declaring that Defendants Myers and TWRC members violated Plaintiffs' rights to Reelfoot Lake as riparians and enjoining these Defendants from interfering with Plaintiffs' actions to extend their dock on their lake bed property.

Idaho v. Coeur d'Alene Tribe, 117 S. Ct. 2028 (1997), involved claims similar to those presented here. In that case, an Indian tribe sought a declaratory judgment establishing its right to quiet enjoyment of the submerged lands of Lake Coeur D'Alene, as well as prospective injunctive relief against various Idaho state officials to prevent them from exercising the state's asserted regulatory jurisdiction over those submerged lands. 117 S. Ct. at 2032. The Court identified the underlying dispute as whether "the Coeur d'Alene Tribe's

---

[3] In MacDonald v. Village of Northport, 164 F.3d 964, 971 (6th Cir. 1999), the Sixth Circuit Court of Appeals noted that, "[b]efore 1997, we would have determined whether the MacDonalds' action was permitted by assessing whether they sought only prospective equitable relief as opposed to any form of money damages or other legal relief. In 1997, however, a sharply divided Supreme Court narrowed the scope of Ex Parte Young." Now, a court must also determine whether the relief sought intrudes "on state sovereignty as much as an award of money damages." Id. (citing Idaho v. Coeur d'Alene Tribe, 117 S. Ct. 2028, 2042 (1997)).

ownership extends to the banks and submerged lands of the lake and various of these rivers and streams, or instead is vested in the State of Idaho." Id. at 2031. Rather than decide this dispute, however, the Court found that it was "limited . . . to the important, preliminary question whether the Eleventh Amendment bars a federal court from hearing the Tribe's claim." Id. at 2031-32.

The Court determined that *Ex parte* Young was inapplicable to the tribe's action against state officials insofar as it sought a judgment establishing the tribe's exclusive use and occupancy of the submerged lands, a declaration of the invalidity of all Idaho laws and customs purporting to regulate those lands, and injunctive relief prohibiting state officials from taking action in violation of the tribe's alleged rights to the land. Id. at 2040-41. The Court noted that "lands underlying navigable waters have historically been considered 'sovereign lands'" and "[s]tate ownership of them has been 'considered an essential attribute of sovereignty.'" Id. at 2041. The Court concluded that, if the tribe were to prevail, "Idaho's sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." Id. at 2043.

Here, the action against Defendants Myers and TWRC members is barred because it, too, is in the nature of a quiet title action implicating special sovereignty interests. The gravamen of Plaintiffs' complaint is that the wildlife agencies' procedures and regulations interfere with and will damage Plaintiffs' alleged riparian property rights on Reelfoot Lake. Complaint at para. 9. Plaintiffs seek a declaration which would, in effect, invalidate the

regulatory authority under which Defendants perform their duties in controlling and administering the Reelfoot Lake area.   Here, as in Coeur d'Alene Tribe, the importance of state regulatory control over, and public ownership of, Reelfoot Lake does not support prospective federal court injunctive relief because that relief intrudes on state sovereignty as much as an award of money damages. Accord MacDonald v. Village of Northport, 164 F.3d 964 (6th Cir. 1999) (The 7th Street right-of-way provided public access to the Grand Traverse Bay, a navigable waterway that was part of the Great Lakes and, because the state had a great interest in maintaining public access to the Great Lakes, the requested relief implicated "special sovereignty interests;" therefore, the Eleventh Amendment barred the action.); ANR Pipeline Co. v. Lafavre, 150 F.3d 1178 (10th Cir. 1998) (Request by natural gas companies that state re-certify property tax assessments was barred because it sought functional equivalent of money judgment against state and intruded on state's special sovereignty interests.)   Because the relief sought is the "functional equivalent" of a quiet title action against the state, which implicates the state's "special sovereignty interests," Defendants Myers and the TWRC members are entitled to Eleventh Amendment immunity.

Plaintiffs have attempted to distinguish Coeur d'Alene Tribe from their case on the ground that they are not seeking a declaration of ownership as to the Reelfoot Lake bed. According to Plaintiffs, the issue of ownership was "decided in their favor in 1913 by the Tennessee Supreme Court" in State ex rel. Cates v. West Tenn. Land Co., 127 Tenn. 575, 158 S.W. 746 (1913).  Plaintiffs' Response at 5.  Plaintiffs assert that, in 1788, the state of

North Carolina gave a man named Colonel Doherty several tracts of land in the present Lake

and Obion Counties of Tennessee. Id. (citation omitted). Tennessee was established in 1796.

One of Colonel Doherty's tracts was number 51, portions of which became part of Reelfoot

Lake after the 1811-1812 earthquakes that caused the formation of the lake. Id. Plaintiffs

contend that they trace their title back to Colonel Doherty's tract 51. Id. Plaintiffs rely on the

following language in Cates in support of their argument.

> Does the fact that the Doherty grants were submerged by the lake after they
> were granted, and are now the bed of a navigable stream, deprive the owners
> of the submerged land of their title to the lands and their right to claim the
> fisheries in the waters lying over them? Upon this particular question, we have
> not been cited to any authority directly in point, and we have found none. It
> would seem, on principle, that the title to the land would be unaffected by the
> formation of the lake, and its owners would be entitled to its use and its
> enjoyment as long as they can reasonably identify it and fix its boundaries. It
> is proven in this case that the Doherty grants can still be identified, and their
> boundaries are reasonably well established. The waters of the lake are clear,
> and many of the monuments of boundary can still be identified. Grants Nos.
> **51**, 90, and 31 are not totally submerged, and portions of them are still upland
> and form parts of the shore of the lake….As these lands were grantable by
> North Carolina, and were subject to private ownership before the formation of
> the lake, **we are of the opinion that the mere fact that they have since**
> **become submerged by a body of navigable water does not deprive the**
> **owners of their title to the land as long as they can be reasonably**
> **identified.** Upon all of the authorities, this title and ownership will carry with
> it the exclusive right of fishery in the waters over these grants. This, of course,
> does not include the right of detaining the fish, or preventing their free
> movement through the waters of the lake, and only includes the exclusive right
> to take fish in the waters over these grants as they may be found according to
> their natural inclination.

Cates, 127 Tenn. at 597-598 (emphases added by Plaintiffs).

Plaintiffs then reason as follows:

> The State of Tennessee, in obvious recognition of Plaintiffs' lake bed title, condemned in September 1913 (six months after the <u>West Tenn. Land Co.</u> decision) that portion of Doherty Tract 51 below low water mark. Affidavit of Jamie Hamilton, and Amended Complaint para. 6 and exhibit 3 and Amended Answer. Low water mark in 1913 was at or below 276.0 feet elevation. <u>Id.</u> Later, the lake level was raised to 282.2 feet elevation by a dam. <u>Bunch v. Hodel</u>, 642 F. Supp. 363, 371, 375 (W.D. Tenn. 1985), <i>aff'd</i> 793 F.2d 129 (6th Cir. 1986). Therefore, the high water mark is 282.2 feet. Affidavit of Vincent A. Sikora, exhibit 10: Memorandum of Dewey L. Jones, Chief, Hydraulics Branch, U.S. Army Corps of Engineers, September 8, 1982.

Plaintiffs' Response at 6.

Plaintiffs' reliance on <u>Cates</u> is misplaced. <u>Cates</u> does not establish that the property of *these* plaintiffs derives from the Doherty grants. Additionally, the opinion makes clear that, in order to establish title to submerged land of Reelfoot Lake, the owners must be able to "reasonably identify [the land] and fix its boundaries." 127 Tenn. at 597-598. Here, Plaintiffs have merely alleged that their property derives from Doherty tract 51. Furthermore, the affidavits that Plaintiffs have submitted make conclusory assertions about the lake level of Reelfoot Lake at the beginning of this century. <u>See</u>, <u>e.g.</u>, Affidavit of Jamie Hamilton at para. 2. That is not sufficient to meet the demand of <u>Cates</u> decision to reasonably identify the boundaries and does not establish that Plaintiffs' ownership of the land is undisputed.

Plaintiffs have submitted with their second supplemental response a letter dated August 21, 1987, from Mary E. Walker, an Assistant Attorney General, to Frank Madlinger, with the Tennessee Wildlife Resources Commission. Plaintiffs contend that the letter supports their position that they are riparian owners of the property in question. However, the letter clearly states that "[t]his is not a formal opinion of this office, but simply a response

by the undersigned." Walker Letter at 1. Moreover, the letter does not mention Plaintiffs or their claim to the land. The letter, at most, if at all, lends <u>some</u> support to Plaintiffs' position. However, neither the letter nor any of Plaintiffs' other documentary evidence establishes that Plaintiffs are the <u>undisputed</u> owners of the property. Therefore, this action is in essence a quiet title action, and the reasoning of <u>Coeur d'Alene Tribe</u> applies.[4]

Plaintiffs also argue that <u>Coeur d'Alene Tribe</u> is distinguishable because they have no direct cause of action in state court as did the plaintiffs in <u>Coeur d'Alene Tribe</u>. However, as noted by the Tennessee Court of Appeals in its opinion reviewing the dismissal of Plaintiffs' action by the Obion County Circuit Court, the Uniform Administrative Procedures Act expressly provides a remedy and "the jurisdictional prerequisites for seeking review of an agency's actions through a declaratory judgment proceeding." <u>Hamilton v. Cook</u>, 1998 WL 704528 (Tenn. App.) at *7 n. 6 (citation omitted). Under T.C.A. § 4-5-223(a), "any affected person may petition an agency for a declaratory order as to the validity or applicability of any statute, rule or order within the primary jurisdiction of the agency." Therefore, Plaintiffs' argument is without merit.

Finally, Plaintiffs attempt to distinguish their own case by noting that <u>Coeur d'Alene Tribe</u> was not brought pursuant to § 1983. Plaintiffs assert that sovereign immunity and the Eleventh Amendment are limited in actions, such as their own, brought under § 1983.

---

[4] Ordinarily, a motion for summary judgment will be denied if there are disputed issues of material fact. <u>See</u> Fed. R. Civ. P. 56. In this case, however, the fact that Plaintiff's ownership of the land is disputed supports the grant of summary judgment because the action becomes the equivalent of a quiet title action against the state of Tennessee which is barred by the Eleventh Amendment under the holding in <u>Coeur d'Alene Tribe</u>.

Plaintiffs are in error. It is well-settled that § 1983 does not abrogate Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332, 345 (1979).

Accordingly, Defendants are entitled to judgment as a matter of law on the claims brought against Gary Myers, the executive director of the TWRA, and the members of the TWRC in their official capacities.

Alternatively, Defendants argue that, even if they are not entitled to immunity, Plaintiffs have failed to state a claim under § 1983 because they cannot establish a constitutionally protected property interest in the waters of Reelfoot Lake or the land thereunder.

In order to establish a due process violation, Plaintiffs must first demonstrate that they had some constitutionally protected property interest that has been compromised. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 2705-2706 (1972). In 1973, the Tennessee General Assembly designated Reelfoot Lake as a "Class I" scenic recreational area under the Natural Areas Preservation Act, T.C.A. § 11-14-101, et seq. 1973 Tenn. Pub. Acts, ch. 185, § 1. In 1984, the legislature named TWRA and TWRC as the primary agencies to administer activities at Reelfoot Lake. 1984 Tenn. Pub. Acts, ch. 548, now codified at T.C.A. §§ 11-14-116; 70-1-302(d) and 70-1-305(11). At that time, the legislature specifically transferred rulemaking authority with respect to the administration of the Reelfoot Lake natural area from the Department of Conservation to the TWRC. T.C.A. § 11-14-116(c) and § 70-1-206(a)(6). Under T.C.A. § 70-5-107(d)(1), all lands surrounding the waters of, or that are

11

surrounded by the waters of, Reelfoot Lake are expressly designated a state wildlife management area. TWRC has promulgated rules governing: the permitting and use of waterfowl blinds on various wildlife management areas (Tenn. Comp. R. & Regs., ch. 1660-1-2-.02); hunting and miscellaneous uses of wildlife management areas (Tenn. Comp. R. & Regs., ch. 1660-1-8-.04); and the leasing and permitting of state owned property at Reelfoot Lake (Tenn. Comp. R. & Regs., ch. 1660-1-12-.01).

The Tennessee Supreme Court has declared Reelfoot Lake to be "a navigable stream in the strict technical legal sense" with ownership of the lake bed vested in public trust in the state of Tennessee. State _ex rel._ Cates v. West Tennessee Land Co., 127 Tenn. 575, 586, 158 S.W. 746 (1913). Additionally, the legislature has provided in T.C.A. § 69-3-102(a) that the waters of Tennessee are the property of the state and are held in public trust for the use of the people of the state. Under Tennessee law, both the bed and the use of a legally navigable body of water belong to the public. Stewart v. Clark's Lessee, 32 Tenn. (2 Swan) 1, 6 (1852); accord Cates, 127 Tenn. at 588-89, 158 S.W. at 750. The public use and ownership includes navigation, hunting and fishing rights, and "everything of value incident to a right of public soil." Id. at 589, 158 S.W. at 750; see also Webster v. Harris, 111 Tenn. (3 Cates) 668, 677 (1902). The Sixth Circuit has noted the application of the public trust doctrine to Reelfoot Lake by the Tennessee Supreme Court. See Bunch v. Hodel, 793 F.2d 129, 133 (6th Cir. 1986). The United States Supreme Court has also recognized that the beds beneath navigable waters are held by the sovereign. Idaho v. Coeur d'Alene Tribe of Idaho, 117 S.

12

Ct. 2028, 2041 (1997).   In light of the public trust doctrine and the enactments of the Tennessee General Assembly, Plaintiffs have no constitutionally protected property interest in any waterfowl blind site on or over state lands or waters at Reelfoot Lake.

Plaintiffs also maintain that the Reelfoot Lakeshore Use Permit Program established by Defendants Myers and TWRC members interferes with their riparian property rights because it limits their ability to build or extend a dock on the lake.   Defendants' policies are authorized by state statute, T.C.A. § 70-4-205, which provides for the use of state-controlled water areas and land bordering thereon.   This statute expressly provides that it is illegal to place docks or floats, or to use for any purpose state controlled lands or waters, "unless such rights and privileges are held by a signed, written agreement, for which a fee may be charged."   T.C.A. § 70-4-205(a)(1).

As discussed above, the Cates decision does not establish Plaintiffs' ownership in, and exclusive use of, a portion of both the waters of, and land underlying, Reelfoot Lake.   The Cates Court stated that when land is submerged, even though the overlying waters be legally navigable, the landowner is not deprived of pre-existing title to the land, "as long as [it] can be **reasonably identified**."   127 Tenn. at 598 (emphasis added).   Plaintiffs' assertion of riparian rights by virtue of a deed to residential property in Obion County fails because this deed merely establishes that Plaintiffs' real property extends to the ordinary low water mark of Reelfoot Lake.

However, even if Plaintiffs could establish title to the submerged land, that would not

13

prevent Defendants' exercising their powers under Article XI, § 13 of the Tennessee Constitution to protect and preserve wildlife in the state. "[T]he power of the Legislature to enact laws for the protection and preservation of game in the forest, and fish in the waters of the State, has been so frequently exercised, and . . . has been so uniformly maintained, that the question has now passed beyond the realm of debate." Peters v. State, 96 Tenn. 682, 688-89, 36 S.W. 399 (1896) (citations omitted). Thus, any hunting and fishing rights that Plaintiffs may have are "subject to reasonable governmental regulation." Rice Hope Plantation v. South Carolina Public Service Authority, 216 S.C. 500, 59 S.E.2d 132, 134 (1950). Consequently, Defendants are entitled to summary judgment on this ground also.

Finally, Defendants assert that the claim for damages against Defendants Cook, Dykes, Tweed, Hendren, Evans, Brown, Martin, Thurston, Thompson, and Hurst must be dismissed because they are entitled to qualified immunity.[5]

Plaintiffs allege that the individual Defendants violated their rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, based on Defendants' seizure and removal of Plaintiffs' floating duck blind, decoys, and boat from Reelfoot Lake. It is undisputed that Defendants removed the blind, decoys, and boat from Reelfoot Lake on November 16, 1996. It is also undisputed that the blind site was neither registered with nor permitted by TWRA, and that the blind, decoys, and boat were returned by Defendants to the

---

[5] The Eleventh Amendment does not immunize state officials for actions taken in their individual capacities. Sullivan v. Barnett, 139 F.3d 158 (3rd Cir. 1998). Therefore, the individual defendants must look to the doctrine of qualified immunity.

14

custody of Plaintiffs ten days after their removal.  See Affidavit of Paul Brown.

Officers sued in their individual capacities for acts committed under color of state law may raise the defense of qualified immunity as an affirmative defense on a motion to dismiss or on a motion for summary judgment.  Dominque v. Telb, 831 F.2d 673, 677 (6th Cir. 1987). When the defense of qualified immunity is raised, the plaintiff bears the burden of establishing that the "contours" of the constitutionally right allegedly violated were sufficiently clear, at the time of the alleged violation and in relation to the acts committed, "that a reasonable official would understand that his or her conduct violate[d] that right." Wegener v. City of Covington, 933 F.2d 390, 392 (6th Cir. 1991); Anderson v. Creighton, 483 U.S. 635, 640 (1987).  The plaintiff may not allege the violation in terms of a general, abstract right in order to survive summary judgment.  Anderson, 483 U.S. at 639-40.  Rather, the plaintiff must establish that "in light of pre-existing law the unlawfulness [was] apparent," id. at 640, such that "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct."  Poe v. Haydon, 853 F.2d 418, 425 (6th Cir. 1988) (quoting Dominque, 831 F.2d at 673), *cert. denied*, 488 U.S. 1007 (1989).

The determination of whether such a clearly established legal right existed is to be decided by the court as a matter of law.  Dominque, 831 F.2d at 677.  If the "undisputed facts show that defendant's conduct . . . did not violate [that] clearly established legal right[]," the court must grant summary judgment for the defendant.  Id. at 425.  If, however, "there is a

factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate[d] clearly established rights," the court must deny summary judgment.  Poe, 852 F.2d at 426 (parenthetical in original).  Thus, the ultimate burden remains with the plaintiff to show that the defendant is not entitled to qualified immunity in a § 1983 action.  McRea v. Zeiba, 955 F. Supp. 801, 806 (N.D. Ohio 1996).

In order for a constitutional right to be clearly established, the law must be clear concerning the official's actions in the particular situation.  Id.  This means that:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635 (1987).  Therefore, the particular conduct of the government official must fall clearly within the area protected by the constitutional right such that a reasonable official would have known that his or her conduct violated the plaintiff's constitutional right.  Walton, 995 F.2d at 1336.  As the Sixth Circuit stated in Coffy v. Multi-County Narcotics Bureau, 600 F.2d 570, 581 (6th Cir. 1979), "[w]here an officer lawfully performs duties imposed by law or follows directions of a supervisor that are fair and reasonable on their face, the officer should be deemed to have acted reasonably as a matter of law."

To find a clearly established right, the court must find binding legal precedent either

by the Supreme Court, the Court of Appeals for the Sixth Circuit, or the Tennessee Supreme

Court. Robinson v. Bibb, 840 F.2d 349, 351 (6th Cir. 1988). It is possible in extraordinary

cases for the decisions of other courts to clearly establish a principle of law. But before the

decisions of other courts can be accepted as providing clearly established law, "these

decisions must point unmistakably to the unconstitutionality of the conduct complained of

and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the

mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would

be found wrong." Ohio Civil Service Employees Ass'n v. Seiter, 858 F.2d 1171,1177 (6th

Cir. 1988).

In Hunter v. Bryant, 112 S. Ct. 534 (1991), the Court interpreted the qualified

immunity defense in the context of a claim that an arrest without probable cause violated the

Fourth Amendment. The Court held that the defendants had probable cause for the arrest,

but also found that even if the defendants had erred in believing probable cause existed, "the

qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all

but the plainly incompetent and those who knowingly violate the law." 112 S. Ct. at 537

(citation omitted).

In its opinion in the related state court proceeding, the Tennessee Court of Appeals

found that the individual defendants were not entitled to the defense of qualified immunity,

because a genuine issue of material fact existed as to "whether or not the waterfowl blind was

registered." Hamilton v. Cook, 1998 WL 704528 (Tenn. App.) at *11.

The Hamiltons' complaint indicates that their boat was being used as part of a floating waterfowl (duck) blind. Under the applicable TWRA rule, TWRA officers were authorized to remove the floating waterfowl blind from Reelfoot Lake, at the discretion of the area manager or a designee of TWRA, provided that the floating waterfowl blind was either unregistered or unnumbered. Tenn. Comp. R. & Regs. 1660-1-2-.02(3)(c) (as revised in July 1996). Although the Defendants' answer asserts that the waterfowl blind was unregistered, the Hamiltons' complaint fails to contain any allegations relative to this fact, except for the assertion that the boat itself was "properly permitted." Inasmuch as the complaint is silent on the factual issue of whether or not the waterfowl blind was registered, we conclude that a genuine issue of material fact exists as to the availability of the defense of qualified immunity and that this issue more properly would be addressed by a motion for summary judgment or other appropriate proceeding.

1998 WL 704528 at *10-11 (citation omitted).

As noted above, Defendants have now established that the floating blind that was removed on November 16, 1996, was located within the jurisdiction of the waters administered by TWRA and was not registered. See Affidavit of Paul Brown and Affidavit of Frank Evans.

Moreover, Plaintiffs were not denied procedural due process when Defendants did not provide them with advance notice of the seizure or a warrant because the wildlife agencies' policies and regulations in existence at that time established that such structures were illegal and were subject to removal. That is all the notice that was required.

T.C.A. § 70-1-305 provides the TWRA with broad enforcement authority of the wildlife laws. Among other things, it gives the agency the power to "[e]nforce all laws relating to wildlife, and to go upon any property, outside of buildings, posted or otherwise, in the performance of the executive director's duties." T.C.A. § 70-1-305(1). T.C.A. § 70-6-

18

101 imposes a duty on wildlife officers to ascertain whether the requirements of the wildlife statutes and regulations are being complied with.  Hughes v. State, 195 Tenn. 290, 259 S.W.2d 527 (1953). This includes authority to go on property where waterfowl blinds are visible during an open hunting season in order to conduct a field inspection.

The management of wildlife resources, including most types of hunting and fishing, is heavily regulated under both state and federal laws.  The United States Supreme Court has recognized an exception to the warrant requirement in the context of statutory schemes that involve this type of pervasive regulation.  See, e.g., New York v. Burger, 107 S. Ct. 2636(1987).   A warrantless search of a pervasively regulated industry or business is reasonable when certain criteria are met:

> First, there must be a "substantial" government interest that informs the regulatory scheme to which the inspection is made. . . .  Second, the warrantless inspection must be "necessary to further [the] regulatory scheme.". . . Finally, . . . the regulatory scheme must perform the two basic functions of a warrant: it must advise the [persons involved] that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

Burger, 107 S. Ct. at 2644 (citations omitted).

Finally, Tennessee's wildlife statutes provide that only TWRA officers or other full-time wildlife enforcement personnel may go onto property, outside of buildings, to enforce all wildlife laws.  T.C.A. § 70-1-305(1), (7); § 70-6-101(a). Everyone who participates in the privilege of hunting has a duty to permit inspections to determine whether they are complying with the applicable laws.  T.C.A. § 70-6-101(b). The only substantive limitation

on Defendants' enforcement authority is in T.C.A. § 70-6-101(c), which does not permit a

search of person's dwelling or place of business without a search warrant.

In <u>Monroe v. State</u>, 253 S.W.2d 734 (Tenn. 1952), the Tennessee Supreme Court

reaffirmed the right of game wardens to make inspections and conduct searches without

warrants when it is clear that someone has been exercising hunting privileges.  The Court,

upholding the wildlife officers' warrantless search of defendant's vehicle, cited its earlier

decision in <u>State v. Hall</u>, 164 Tenn. 548, 51 S.W.2d 851 (1932), and stated as follows:

> In the <u>Hall</u> case it was not expressly held that the Act authorized
> Game Wardens to make searches without search warrants but such
> is clearly the inescapable implication.  This Court speaking through
> the late Mr. Justice McKinney cited a wealth of authority to illustrate
> the proposition that he who undertakes to avail himself of a privilege
> granted by the State must do so on whatever terms and conditions
> the State chooses to annex to the exercise of the privilege, including
> the waiver of constitutional rights.

253 S.W.2d at 736.

In light of the extensive statutory and regulatory scheme, Defendants' warrantless

inspection of Plaintiffs' floating blind was reasonable under the Fourth Amendment because

Defendants have a substantial governmental interest in protecting and preserving the state's

wildlife resources.

Plaintiffs also contend that Defendants' seizure and retention of their boat, blind, and

decoys deprived them of their property without due process of law in violation of the Fifth

and Fourteenth Amendments.   In <u>Parrat v. Taylor</u>, 451 U.S. 527 (1981), the Supreme Court

recognized that in many situations it is impracticable or impossible to provide an opportunity

to be heard before the initial deprivation of a property interest. In those instances, the requirements of due process are met if the state provides an adequate post-deprivation remedy. Id. Furthermore, once a property owner has notice of a seizure, due process does not require any additional notice of state remedies that are already established in law.

In City of West Covina v. Perkins, 119 S. Ct. 678 (1999), the Ninth Circuit had held, 113 F.3d 1004, that Perkins' right to due process was violated, because the City of West Covina failed to give him notice of the state procedures for seeking return of seized property and the information necessary to invoke those procedures. The Supreme Court reversed, holding that once the property owner has notice that his property has been seized, the Due Process Clause does not require that the owner be provided with further notice of state law remedies that are established by published, generally available state statutes and case law. Id. at 681-82.

It is undisputed that Plaintiffs received notice of the seizure on November 16, 1996, the same day that defendants removed them from the lake. Affidavit of Gary Cook. Defendants did not issue a citation to Plaintiffs on November 16, 1996, because they could not be certain of the ownership of the boat blind and wanted to investigate the matter further. Id. Defendants returned the boat blind and decoys to Plaintiff Jamie Hamilton ten days after removing them from the lake. Id.; Affidavit of Paul Brown. No arrest was made or citation given to Plaintiffs under T.C.A. § 70-6-201. Although the wildlife agencies have procedures for claiming seized property under T.C.A. § 70-6-204, these were not applicable, since the

21

property was returned within ten days.  However, even if Defendants did not follow their own internal regulations and policies concerning seizure of property, state policies do not, by themselves, create constitutionally protected liberty or property interests in the particular procedures set forth by those policies.  Bills v. Henderson, 631 F.2d 1287, 1298-99 (6th Cir. 1980).

Plaintiffs have not met their burden of demonstrating that the individual Defendants violated a clearly established right of which a reasonable official would have been cognizant; thus, the Defendants sued in their individual capacities are entitled to qualified immunity.

Because Defendants Myers and the TWRC members are entitled to immunity under the Eleventh Amendment and the officials sued in their individual capacities are entitled to qualified immunity and because Plaintiffs have failed to state a claim under § 1983, Defendants' motion for summary judgment is GRANTED.  The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

_James D. Todd_
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_January 12, 2000_
DATE